Our next case, 24-13873 Clayton v. Essentia Insurance Company. And we have a Mr. Cooper for the appellant and Mr. Rodin for the appellee. And whenever Mr. Cooper is ready, you may begin. May it please the Court. My name is Ben Cooper. I represent Essentia Insurance Company. This case is about whether a specific kind of niche specialty Can you begin with the jurisdiction question that we issued, please? Certainly, Your Honor. As we addressed in our supplemental filing earlier this week, We believe that the amount in controversy requirement was satisfied by the complaint. The complaint expressly alleged claim for all benefits provided by the policy. It's undisputed that the policy described in the complaint was $100,000 policy limits And that that's what Mr. Clayton seeks. That's different from the position that you took at summary judgment, right? Because the policy also says that it's limited to the minimum amount allowed by statute, correct? That was a contested point about whether or not... But that was your position, right? That was our position, but that's not what the claim was. And that's what governs in this case. Well, and the district court found that it was so obvious that it agreed with you on that point, right? I don't know that the district court found it was obvious. That wasn't what the court used. Did you get any? Was there any evidence whatsoever presented to you to lead you to believe that there were damages exceeding $75,000? There were. There were claims of the kind that... Claims of the kind? What specifically? Well, there were claims for permanent injuries. Who supported that? We had to base that analysis, the amount of controversy on the complaint. This was an auto accident, a claim. Well, let's just ask in the record, just in the record, what is there in the record that suggests that more than $75,000 was a controversy? So there's the claim for the policy limits and the policies in the record. Is there anything in the record about the injuries that he suffered? Yes, he testified concerning it. He was injured. He was off work for a couple of months. He suffered continuing pain. He received medical treatment. He was injured by a drunk driver, which would have entitled him under Alabama law to punitive damages. For instance, for the medical treatment, did he provide any sort of evidence to substantiate the dollar amount? We didn't get there, Your Honor. We had a claim. We didn't get there because there was a summary judgment motion regarding the enforceability of the policy limitations. I guess I'm asking what besides just the naked assertion do you have? Like what specific evidence do you have to support that you meet the amount of controversy here? Otherwise, somebody can say, oh, I claim the policy limits, nothing else, and therefore diversity jurisdiction. But we have to find more than that. Well, the precedent in this circuit, as district courts have applied it consistently in the cases we've cited, is to look at the allegations of the complaint. Are there allegations of permanent injuries? Are there allegations of— Here, I looked at the complaint, and these are very naked allegations. They literally just say the word. And Judge Brasher asked you, is there anything after the complaint? You know, assuming we can look at more than the complaint, is there anything that happened after that that would give any sort of specifics that you meet the amount of controversy here? Well, it is, and it's in his deposition, and we summarized that briefly. We didn't realize the jurisdiction was available. We would have gone more into the allegations. Well, we issued the question to you asking you specifically why you meet the amount of controversy. In his complaint, he testifies at length as to both compensatory damages and as to the fact that he was hit by an intoxicated driver, which would have supported a claim for—and did support a claim for punitive damages. And the case law, you have to include that in a 2-1 or 3-1 multiplier into calculating whether or not it meets the amount of controversy requirement. He contended he had permanent injuries. He contended that he was off work for a couple of months. So are you essentially asking to provide another supplement with the specifics that we would need? We can recite what is in greater detail, what is in his deposition, which is in the record in its entirety. And we can do that, but this is not unusual in a case that's removed where the complaint does not seek a specific amount. But at the point of removal when this is determined, the allegations of the complaint, which is what is known to the removing party, combined with a claim for all the policy limits of the complaint, which Mr. Clayton's counsel confirmed was $100,000. That's what the applicable limit was. When you move for summary judgment to try to get the policy limit reduced to $25,000, did they oppose that? Yes, they opposed. There were two arguments. That was the backup argument. The argument was we didn't provide coverage at all. The backup argument, if we're required by law to provide coverage, which we don't think it, drops down to $25,000. And Mr. Clayton's counsel opposed that. So that was a contested point. So even at summary judgment, they were saying we're not satisfied with $25,000. We want $100,000. That's correct. That's correct. We prevailed on that point, but that was not a sure thing how that would work. So one thing that just to move off, this is still kind of a removal question, but it bothers me when people were moved to federal court and then they ask us to certify questions to the state court. You could have had the state court rule on this issue and you decided you wanted us to do it. I understand that. In retrospect, we would not have done it. In future cases of this kind where we're dealing with this kind of novel issue, we would not remove it. But we don't think that in light of the case law applying, subsection J of the Safety Responsibility Act, the multiple policies provision, that there's now sufficient case law that this court does not need to certify it. Because while the Alabama courts have not yet addressed the enforceability of an adjunctive policy, that is one that requires the insurer to maintain another policy that has for regular use vehicles that provides all the state required coverage, all the cases to date from the Alabama Supreme Court have involved standard standalone policies. The Alabama legislature has provided statutory authority for this kind of adjunctive approach in subsection J of the statute, which says that you can meet all the requirements or any requirements for a motor vehicle liability policy but through multiple policies issued by one or more insurance carriers that are taken together. And we cited in our public the Royal Insurance case and the State Farm case where the Alabama Supreme Court applied that statute to uphold exclusions and policies that wouldn't have otherwise been allowed, where you look at them together. And in this case, this is a very niche policy. This is a very low premium policy, $117 for the whole thing, $24 a year for uninsured motorist coverage. It seems like their argument on this, and I don't know if it's right, it seems like their argument is that you don't have to provide, maybe this is their argument, is that you might not have to provide uninsured motorist coverage, but if you do, it's portable. And sort of like that's what the Alabama Supreme Court has said, is that whenever you provide uninsured motorist coverage, it's portable. What do you say about that? Well, because the adjunctive policy provides that. That is, we provide for the marginal risk of this little used car, in this case a 60-year-old pickup truck, a vintage car. And then we require them to have a policy that provides the kind of standard portable coverage. So the two taken together achieve the statutory purpose of making sure that there is $25,000 in coverage available for the insured. And that's what the Alabama Supreme Court has said in both the State Farm case and in the Royal Insurance case. It doesn't matter which policy pays for it, as long as there is a policy providing it, the policy is permissible. And this isn't a case where we just assumed that Mr. Clayton would have another vehicle and would have a standard portable coverage on that vehicle. We would not have issued our policy, and we reserve the right to cancel or not renew or rescind our policy, if he didn't have a regular use vehicle for general transportation with full portable coverage that meets state law on that. So we're just providing for a very low price coverage for that marginal risk when he or anyone else is occupying a little used car. Again, this is an unusual statute. About half the states have it, which is how we found the Alabama cases. We didn't have them at first because they cited a prior version from the Code of 1940, and the numbers didn't match up and it didn't show up in the annotations. But in that case, the Alabama Supreme Court said you need to look at both policies together, in this case, the garage policy and the person's personal auto policy, and together they provided the statutorily required coverage. In this case, you look at its portability issue, you look at our UIM coverage, and then you look at the portable coverage that we require him to maintain on his regular policy together. Could you just, I mean, this may be super easy for you to do, so I'm asking you on the fly. Where in the policy, in your policy, does it say you have to have another policy that has portable uninsured motorist coverage? If you look at our policy in the record, it's page 19, part F, section B1A and B, in the state endorsement, there's a rather extensive discussion of the regular use vehicle requirement. That's really what distinguishes it from all the other kinds of cases, and that was the point of we relied on the Colorado Supreme Court's decision in Essentia a couple of years ago, and the district court here found that persuasive but didn't see the hook in Alabama law. And the hook in Alabama law is the statute, which we did cite to the district court, and the two Alabama cases, which we did not have at the time, which said that you look at them together, and as long as someone is providing the $25,000 in coverage, then the policy passes muster. In this case, Mr. Clayton did have a regular use vehicle, his motorcycle. He's a motorcycle mechanic, and he had a GEICO policy that provided the $25,000 in coverage. So when the two policies put together satisfied the statute. If that statute, multiple policy statute, subsection J, applies anywhere, applies here, it does so to make this kind of niche specialty policy workable and affordable, and that is Alabama public policy for vintage vehicles. It runs through a variety of mechanisms to make it possible to maintain these kinds of vintage cars that aren't used very much, and this is the mechanism we've come up with that other courts have upheld. All right, thank you. All right, you've saved us some time for rebuttal. Good morning, Your Honors. Good morning. May it please the Court. I'll keep it brief. This Court should affirm the order of the District Court in holding that Essentia should afford UMUIM coverage to Mr. Clayton. To do so would fly in the face of longstanding Alabama law. To put it simply, Alabama law has long held that absent a signed written rejection form, UMUIM must be afforded to, at the very least, named insureds. The seminal case, which we've been screaming from the rooftops since the beginning of this case, is State Farm versus Reeves, which presented a fact pattern much like the one that we see here. The insurer in that case attempted to limit UMUIM coverage to instances in which the insured vehicle was being operated. The Supreme Court of Alabama held that such an exclusion is impermissible and repugnant. One thing that you don't, to me at least, seem to address in your briefs at all, is this Alabama code provision that says, quote, the requirements for a motor vehicle liability policy may be fulfilled by the policies of one or more insurance carriers, which policies together meet the requirements for a policy. Why isn't this that case where you've got one policy that clearly meets the requirements of Alabama law and you have another policy on top of that? Well, Your Honor, I believe that Alabama provides a way for Essentia to not provide UMUIM coverage if they don't want to. All they have to do is have Mr. Clayton sign a written rejection form. It's pretty clear and it's a pretty simple process. I just don't believe that they should be permitted to bury language within their policy that excludes the coverage when Alabama has made it abundantly clear that there's an easy way to exclude it if you want to by having them sign a written rejection form. I mean, I understand your point, but that just doesn't seem responsive to this statute. I mean, the statute says you can fulfill these limits through more policies than one through multiple insurance carriers. I mean, just give me, like, when does that statute apply, if not in a case like this one where the policy that you're suing on says you have to have another policy that meets the limits? Your Honor, I frankly don't know when that would apply.  Again, I go back to, and I know I've reiterated it and I apologize for reiterating it. Let me just give you, I mean, let me just ask if you think this is legal. So let's say I've got uninsured motorist coverage through Allstate in, like, a standard policy, and I ask Allstate, hey, I want more coverage than the $25,000 that's mandatory under Alabama law. You know, give me, like, a million dollars of coverage, and Allstate gives me a million dollars of coverage, but they have some exceptions, and one of the exceptions is it's not portable. Is that illegal under Alabama law? Would that extra million dollars of coverage I bought through Allstate, would that be portable? It would be portable if the individual applying for that coverage is named in the omnibus liability provision of that policy. So the way I understand Alabama law and the way I believe it is, is that if you are a, what we call a first-class insured, in other words, if you are specifically named in the omnibus liability provision of the policy, whether it be the named insured, which would always be a first-class insured, or a resident relative, for example, then yes, it should be portable, is the way I interpret this Reeves case. And so that's even if you've got multiple. So if I buy, like, seven policies, so I'm, like, seven times insured, the minimum limits of Alabama law that requires me to be insured, I can collect on all seven of those policies, even if the policy language specifically says, like, we're not covering you for this. These are not portable policies. You're just buying this because you're worried that, like, your 16-year-old son is going to crash your, like, nice car, whatever it is. Alabama policy, like, public policy says that I have to be able to recover on every single one of those insurance policies despite the policy language. The exception would be if... If you sign the thing. And I believe that even if you sign a written rejection form to the effect that they're not going to cover the events unless you're in the specifically insured vehicle, for example, that would be a permissible way to do it. But, again, the intent of Alabama law is to not allow insurers to bury the fact that they're not going to cover uninsured, underinsured motorists in their policy language. That's the whole purpose of the written rejection form. And so going back to your point, if they want to make those exclusions, then they can put those exclusions within the written rejection form. But they could put those exclusions in the written rejection form. That would work even if it's just your only form of insurance, right? So I guess it's a problem for me that you are not giving me any circumstance in which Alabama Code 32-722J would have any effect. It seems like you're saying it just has no effect at all. You either have to follow the provisions under the uninsured motorist thing to just reject uninsured motorist coverage entirely. I mean, I'm trying to, like, what is the role of this statute that I read out earlier that you can fulfill these obligations through multiple insurance carriers, if not this? Well, Your Honor, would it not? The way I think about it is you could fulfill the liability provisions of the Motor Vehicle Act through multiple policies. So you have to carry minimum coverage in Alabama. You have to carry minimum coverage for liability coverage. Right. You do not have to carry uninsured uninsured motorist coverage as long as the insurer has you sign a written rejection form. So the way I interpret that code section is that you could have multiple insurers cover your minimum for liability coverages, such that you meet those minimum thresholds that the legislature has required. Isn't this one of those minimal liability requirements, though, the $25,000 for uninsured motorist coverage? It is not a requirement on the policy. But the courts have said that in order for you to not have that coverage, you have to sign a written rejection form. But it's not a legally mandated coverage, unlike the liability portions of the policy. Okay. If that's the case, then what does Alabama code do? It says no automobile liability or motor vehicle liability policy, insuring against loss, yada, yada, yada, cannot be issued for delivery in this state with respect to any motor vehicle unless coverage is provided therein or supplemental thereto, yada, yada, yada, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles. Isn't that provision of Alabama law? A requirement for uninsured? It must be offered, correct. But it's not mandated. Because you're saying that because you can reject it under this provision?  You can't reject liability coverage. You can't have anything less than that liability coverage. So, for example, I suppose in theory with the code section we've been talking about, so the minimum bodily injury coverage for Alabama to cover injuries you cause somebody else is $25,000. In theory, you could have $10,000 on one policy and $15,000 on another to combine and say, okay, I meet those minimal thresholds to cover me for this incident. You cannot, there is no way around having at least that minimal liability coverage to cover somebody in the event of injuries that you cause. There is a way around an insurer offering uninsured, underinsured motorist coverage by signing that written rejection form. And so in that way, it's not mandated in all instances under all policies, that being the UMUIM coverage. Okay. On the issue of the jurisdictional amount, I mean, what's your position on that? I don't oppose it, Your Honor, at this point, to be frank with you. But that's not something, the amount of controversy is not something you can agree to. I think we need to know, did you present evidence, did you provide evidence to opposing counsel about the specific amounts that you were seeking? We did in the initial complaint, yes, Your Honor, we did make a claim for the $100,000. Yeah, I read the initial complaint, which has the claim, you say the words punitive damages. But I'm asking what supports that? What supports the other damages that you saw? Well, in this case, we did argue that Mr. Clayton had a permanent injury. He did sit for his deposition, did talk about how he sought treatment for those injuries. And then on top of that— And were dollars discussed at any point during that deposition? No, Your Honor, dollars were not discussed to my recollection. And ultimately, we, excuse me, essentially consented to a judgment. Ultimately, had they not, that would have been a jury question to decide whether we had made or presented substantial evidence to justify an excess of the $75,000 requirement. So at summary judgment, just correct me if I'm wrong about the way this worked, they moved for summary judgment and they said, you know, issue one is we don't owe you anything at all. And that's the thing we've been talking about here. And they say issue two is that the actual policy limit is $25,000, not $100,000, right? That's what they said? Yes, Your Honor. What did you say in response to that summary judgment motion? In response to the— Yeah, you opposed summary judgment. What did you say? In response to point one— Well, both of them. In response to point one, that, again, going back to the seminal cases, that they have to afford UMUIM coverage. And then as to point two, as to whether it drops down to the $25,000, my point was that, again, I reiterated all the things that I said before. It doesn't, there is, when you afford the coverage, you must provide it. And absent a signed rejection form. And I know I keep reiterating that point. But your point was that you get the $100,000 of coverage? That was your response? That was my response.  Just, I guess, just while you've got a few more minutes, I mean, I read your response to our question about whether we should certify this question to the Alabama Supreme Court. Do you want to talk about that anymore in light of the, anything that's happened? No, Your Honor. I believe that, again, going back to the line of cases that the Supreme Court of Alabama has issued, this case is right on point with those line of cases, starting with Reeves. The facts are the same. And so I truly don't believe that this court should have an issue in making a decision in this case. Do you know, I gather you kind of, I'm going to ask the other side this too, but do you know if the insurance commissioner of Alabama has, like, approved this insurance or has weighed in on whether this insurance is legal or anything like that? I don't, Your Honor, to be frank with you. I don't. Unless there's anything else, I'll take my seat. All right, thank you. Thank you. Do you know whether the insurance commissioner has approved this or whether there's a process for approval of policies that are sold into the state? I believe there is, Your Honor, and I believe it has been approved. These are marketed in compliance with each state's law. The, that's essential policy is a very standard policy nationally for collectors of vintage automobiles. And so that's one reason I'm here from Arizona because it's one of my jobs, I argued the Hughes case as well, to defend these policies. But I believe it has been enforced. I'm not sure that's a safe harbor under Alabama law, so we didn't argue it, but we can certainly address it. So it sounds like the plaintiff's argument here is something along the lines of, look, this provision that requires you to provide uninsured motorist coverage has an exception. If you just follow the exception, you don't have to provide the coverage. Why isn't that the right way to resolve this case? Well, the exception is to waive UIM coverage. I don't think Mr. Clayton wanted to waive UIM coverage, and we wanted to provide it. He has $100,000 in UIM coverage if he's using the car that he testified his wife was scared of, the 60-year-old truck. And so we are providing a value in there, and I don't think it serves Alabama public policy to say the only way we can adjust the policy premium and provide coverage for the incremental risk is simply to waive UMUIM coverage for that vintage car. And that doesn't make any sense, and it's, in fact, not the law. The statute says, subsection J that Your Honor read, that the requirements for a policy. It then says in the Section 23, the policy must provide this. It may be waivable, but it's stated as a requirement what the policy must provide. This is every bit as much a requirement of a policy, even if it's ultimately waivable. But I don't think we want people to waive it. I don't think it's Alabama public policy to waive UMUIM coverage because of the policy of ensuring that Mr. Clayton is covered in all circumstances. This is just an innovative way to meet these requirements while still maintaining the affordability of the coverage. Because as the cases we've cited dealing with these kinds of policies indicated, if you don't do that, then you have to start pricing the UMUIM coverage as you would for any other car. So you have a very low-cost liability coverage, but you have a huge UMUIM coverage because we now have to cover whatever vehicles, including motorcycles, the person may otherwise have. The reason we're able to provide that incremental risk, cover $100,000 in UMUIM for $24 a year is because it is the adjunctive policy for this particular car. But Alabama public policy and statutory requirements are met in a way that serves everyone's benefit. All right. Thank you. Thank you, Your Honor. All right. Our last case.